**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUN 28 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-CV-268-KSF

AARON MILGROM                                                                   PLAINTIFF

VS:             **MEMORANDUM OPINION AND ORDER**

MARALYN CAROL BURSTEIN                             DEFENDANT

This matter is before the Court on the parties' several motions, including competing dispositive motions, the defendant's motion, by counsel, for dismissal of the instant cause [Record No. 7], and the plaintiff's motion for summary judgment in his favor [Record No. 10]. For the reasons to be discussed below, the defendant's motion will be granted, the remainder of the motions will be denied, and the instant cause of action shall be dismissed.

BACKGROUND

On June 15, 2004, Plaintiff Aaron Milgrom, identifying himself as a resident of Clark County, Kentucky, filed a *pro se* complaint, alleging the jurisdiction of this Court under 28 U.S.C. §1331 and certain other federal statutes, and paying the district court filing fee for a civil action. He specifically claimed that the named defendant, his ex-wife, (1) committed acts constituting bank fraud under federal law; (2) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (3) thereby facilitated tortious interference with his business.

On July 15, 2004, this Court issued an Order summarizing the plaintiff's allegations as follows:

> The plaintiff states that in May of 1999, he and Defendant Burstein were divorced in the Woodford Circuit Court, with a property settlement to be decided later. According to the plaintiff, the very next month, the defendant began a series of loans with regard to their jointly owned real property, loans which included misrepresentations to lenders and amounted to bank fraud. Moreover, even though he had controlled the couple's business successfully until that time, the plaintiff was purportedly not informed of the loans, and his ex-wife has controlled all of the real estate and all of the income therefrom since that time.
>
> The plaintiff alleges that the trial about the property division has been continued four times, each time at the request of Burstein. Now, 6 years later, still with no trial or settlement, allegedly there are *lis pendens* on their property and there are also serious structural and other problems, which the defendant has caused by not investing in repairs. The plaintiff claims that his ex-wife's interference in his supervision of their income has done great damage to the various sources of income. "The beneficiary of the fraud and the interference has been Burstein, who has now carved out the meat of the portfolio, leaving a shell for Milgrom, if anything."
>
> The plaintiff seeks a declaration that the defendant violated 18 U.S.C. §1344 and tortiously interfered with his ongoing business. Additionally, he asks that the defendant be enjoined in two respects, (1) from using the disputed properties for collateral and (2) from selling them without his consent or full adjudication of the property in the dissolution proceedings. Because the plaintiff has alleged that the amount in controversy exceeds $10,000, the Court construes that he is also seeking damages.

Record No. 2. The Court then discussed the plaintiff's purported claims and found no federal claim stated. Therefore, as the plaintiff was proceeding *pro se* and as the appellate court in this circuit has mandated that such a plaintiff be given notice and an opportunity to respond prior to dismissing his cause (*Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)), the Court concluded the Order with a warning that the Court was considering dismissal and an instruction for the plaintiff to show cause why his action should not be dismissed.

In response, the plaintiff submitted an article on a case in the Third Circuit wherein a spouse was permitted to go forward on a civil RICO claim in the divorce context. Noting that the opinion did not bind this Court but also finding that the plaintiff's showing was not so devoid of merit as to

warrant summary disposition, the Court permitted the instant action to go forward.

## DISPOSITIVE MOTIONS

### The Defendant's Motion

The defendant responded to the complaint with a motion to dismiss [Record No. 7], asserting that (1) the plaintiff has failed to state a claim and (2) principles of abstention apply. In her attached supporting memorandum, with attached documents as exhibits, Burstein provides an extended explanation of her version of the facts about the couple's property, financial arrangements with regard to the properties, and the still-ongoing proceedings relating thereto in several state courts.

As to her first defense, Burstein argues that the plaintiff has failed to state a RICO claim because he does not have standing; the property has been adjudicated as hers, not the plaintiff's; the plaintiff has not alleged an act in furtherance of an "enterprise" or any act that is indictable; and, under RICO, the defendant cannot be both a person and an enterprise. The defendant's second basis for dismissal is grounded in abstention doctrines, as set out in cited Supreme Court and Sixth Circuit case law.

### The Plaintiff's Motion

The *pro se* plaintiff has responded to the defendant's motion with a stack of exhibits and his own dispositive motion, seeking entry of judgment in his favor [Record No. 10]. He claims, *inter alia*, that the defendant and her attorneys have repeatedly misrepresented the facts involved; the mission of the enterprise is theft of real property; he has suffered substantial lost income; and he desires to add the defendant's attorneys, first Lois Matl and later/currently Phillip Moloney, as defendants from whom to seek damages.

3

The plaintiff has also submitted his counter affidavit [Record No. 11] of events, both relevant and irrelevant. The affidavit is subtitled "The Mission of the Network of Judges and Lawyers is a Mob Style Bust Out; a Theory." It contains a discussion of two books, one entitled *The Bluegrass Conspiracy* and the other *Wild Ride*, both about illegal activities in Lexington, Kentucky, in which Milgrom's Domestic Relations Commissioner, Don Paris, purportedly may have played a part. Additionally, the plaintiff complains of falsified legal actions against his "significant other" and her mother, as a part of the personal harassment to which he has been subjected by the defendant and others.

### Additional Responses

The defendant has responded to the plaintiff's motion with a motion [Record No. 12] to strike the plaintiff's motion for summary judgment as being non-responsive to the defendant's motion and to the Court's first Order herein, which advised the plaintiff of his need to file any opposing response in the record. Alternatively, the defendant asks for clarification from the Court as to how she should treat the plaintiff's pleading, *e.g.*, as a response or as a joint response and cross motion? Regardless, the defendant also seeks 30 extra days to respond to the plaintiff's "voluminous response/motion."

On March 15, 2005, the plaintiff filed two pleadings, his first being a motion to supplement his motion for summary judgment [Record No. 13], wherein he makes additional requests for relief, including a request for entry of a default judgment. His second submission [Record No. 14] is his response in opposition to the defendant's motion to strike or clarify and extend time; therein, he counters *seriatim* each representation of the defendant in Docket Entry No. 12.

4

In response to the plaintiff's pleadings, the defendant has submitted a brief reply [Record No. 15], relying upon her previously filed pleadings, with respect to both her original motion to dismiss and the plaintiff's newly filed motion for summary judgment. Although the parties have each brought additional motions before to this Court since completing briefing on their dispositive motions, the Court will not describe or entertain them, as the Court has decided that the instant cause of action should be dismissed.

## DISCUSSION

The final resolution of issues relating to the parties' many properties has yet to be decided in state court. This is so even after several extensions of time and much wrangling, including motions in the divorce court, several hearings, appeals to higher state courts, controversies over the plaintiff's filing numerous notices of *lis pendens* on property involved in the state court, and the filing herein of a civil case and voluminous copies of documents relating to the divorce action and/or their properties' financing. This Court is of the opinion that these are clearly matters for the state courts to resolve, not this Court.

### Federal Claims

To state a claim that is cognizable in federal court as one brought pursuant to 28 U.S.C. §1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), as the plaintiff claims, he must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

The plaintiff in the case *sub judice* cannot meet the second of these two requirements. An ex-wife, even when an ex-wife acts with her divorce attorney(s), is not a state actor. *See Greenlee*

5

*v. Greenlee*, 2005 WL 1030334 (E.D. Mich 2005) (holding that an ex-wife is not a state actor and holding on page 6 that a plaintiff may not proceed in a civil rights action "against a private party 'no matter how discriminatory or wrongful' the party's conduct. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 . . . (1999)"); *see also Patel v. Heidelberger*, 6 Fed.Appx. 436, 2001 WL 436181 (7th Cir. 2001) (unpublished).

Additionally, *Kelm v. Hyatt*, 44 F.3d 415 (6th Cir. 1995), is controlling herein. In *Kelm*, the Court gave a lengthy examination of the law regarding what qualifies for being a "state actor" and found that even when a person uses an unconstitutional state statute, that action "by a private party pursuant to the statute, without something more, was not enough to justify a characterization of that party as a 'state actor.'" *Id.* at 422 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)); *see also, Ragosta v. State of Vermont*, 556 F.Supp. 220 (D.Vt. 1982), *aff'd,* 697 F.2d 296 (2nd Cir. 1982). Thus, the wife therein was entitled to dismissal for failure to state a claim. So should the instant ex-wife herein.

With regard to the RICO claim, a person alleging a violation of RICO must demonstrate (1) the existence of an enterprise engaged in and affecting interstate commerce; (2) two or more predicate offenses; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to his business or property. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). In the case *sub judice,* this Court finds that Plaintiff Milgrom has failed to present even the first of these, an "enterprise," which is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

This Court agrees with the analysis presented and the result reached on similar facts in a sister court in this circuit, *White v. Clay*, 2001 WL 1793746 (W.D. Ky.) *affm'd,* 23 Fed.Appx. 407 (6th Cir. 2001). The ex-husband therein named his ex-wife, her attorney, and others involved in the Kentucky divorce proceeding as defendants and claimed a violation of RICO and state law, in that the defendants purportedly conspired to obtain a disproportionate and unfair settlement of cash and property. On the defendants' motion to dismiss, the court found that the plaintiff had failed to sufficiently allege an enterprise, even a loose association or association in fact, as required under Sixth Circuit law, the district court citing *D'Ambrosi*, 4 F.3d at 1386. Therefore, the RICO-based action was dismissed for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12 (b)(6); the court found that it was not necessary to reach the other relevant RICO elements; and because the federal claim had failed, the state law claims were also dismissed. So should it be herein, on the instant petitioner's conclusory allegations against his sole defendant, his ex-wife.

With regard to the plaintiff's earlier reliance on *Perlberger v. Perlberger*, 1998 WL 76310 (E.D.Pa. 1998), wherein a RICO claim was permitted against an ex-spouse, that case is distinguishable in its facts and location. In that case, an ex-wife brought a civil action based on RICO against her ex-husband, four other persons (including two girlfriends and accountants), and two professional corporations (including her husband's law practice in which he was the only employee). Mrs. Perlberger alleged that after the divorce, she discovered that the named defendants had devised and perpetrated a fraudulent scheme whereby her husband was able to conceal, by half, the true value of his income from both plaintiff and the state divorce court. After setting out the scheme as she alleged it in detail, the court found that all four requisites for a RICO claim were present. *Id.* at *2. This Court cannot find the first element. Also, the property settlement at issue

herein is not final and is in fact being litigated between the same two parties, Milgrom and Burstein, in the state court at this time.

It is also important to note that in addition to having very different facts, the district court in *Perlberger* had a very different precedent. The district court specifically relied on Third Circuit law, where RICO is broadly construed and a RICO claim can be based on "garden variety"fraud. *Id.* at *4 (quoting language in *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3rd Cir.), *cert. denied*, 515 U.S. 1118 (1995)). The plaintiff has pointed to no similar Sixth Circuit precedent binding this Court.

With regard to the instant plaintiff's reference to other criminal laws, the Court also finds that he has no cognizable civil action flowing from the bank fraud statutes which he references, 18 U.S.C. §§1344 and 1014. It is well settled that unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 967 (1958). The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action for the person allegedly harmed. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S. Ct. 2479 (1979); *Cannon v. University of Chicago*, 441 U.S. 677 (1979), 99 S. Ct. 1946).

Whether a private right of action exists is determined by whether Congress intended to create a private right of action. *Id.* The Supreme Court has noted "that the Court has rarely implied a private right of action under a criminal statute." *Chrysler v. Brown*, 441 U.S. 281, 316 (1979); *Cort v. Ash*, 422 U.S. 66 (1975) (discussing the four factors which must be analyzed before concluding that Congress intended to make a remedy available pursuant to a statute). This Court is without jurisdiction over the defendants when the criminal statute relied upon does not imply a private right of action. *Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992).

8

Moreover, the appellate court in this circuit has declined to infer causes of action under criminal statutes. *See Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980); and *see Chumney v. Nixon*, 615 F.2d 389 (6th Cir. 1980). In *Federal Savings & Loan Ins. Corp. v. Metropolitan Federal Savings & Loan Assoc. of Bethesda*, 816 F.2d 130 (4th Cir. 1987), the Fourth Circuit held that the federal criminal code provisions dealing with embezzlement, fraud, and misrepresentation did not imply a civil cause of action. Consistent with the foregoing method of analysis and results, this Court finds no private cause of action arising from the fraud statutes relied upon herein.

As this Court explained in its first Order herein, to the extent that the plaintiff's references to the bank fraud laws are his attempts to initiate criminal actions against his ex-wife for her violations thereof, he is advised that authority to initiate criminal complaints rests exclusively with state and federal prosecutors. *Sahagian v. Dickey*, 646 F. Supp. 1502 (W.D. Wis. 1986). Such complaints must be initiated by a United States Attorney or a federal grand jury, *Kennedy v. Anderson*, 373 F. Supp. 1345, 1346 (E.D. Okla. 1974); a federal court has no authority to do so. *Sahagian*, 646 F. Supp. at 1506.

## Abstention

Even had the instant plaintiff stated a federal claim, however, another ground for dismissal is present herein. The Court agrees with the defendant that abstention is appropriate. In the afore-referenced case of *Kelm v. Hyatt*, the Court wrote about abstention as follows:

> In *Younger v. Harris*, [401 U.S. 37 (1971)], the Supreme Court required that a federal court abstain from enjoining a pending state criminal proceeding. In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, the Court applied *Younger* "to non-criminal judicial proceedings when important state interests are involved." 457 U.S. 423, 432 (1982) (citations omitted). Later, the Court extended the *Younger* principles to state civil proceedings. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987). In *Pennzoil*, the Court held that federal courts must abstain from

9

> hearing challenges to pending state proceedings where the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts. *Id.*
>
> Interpreting the above authorities, we have held that *Younger* requires federal courts to abstain where: (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989).

44 F.3d at 419. As to the first element, "[W]e have held that 'if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied.'" *Id.* (quoting *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991), *cert. denied*, 502 U.S. 812 (1991)).

The *Kelm* court also noted that as to the second element, traditional domestic-relations issues qualify as important state issues; and as to the third requisite, the adequacy of state courts to address any constitutional claim, the court wrote as follows:

> Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff. *Pennzoil*, 481 U.S. at 1. In *Pennzoil*, the Court noted because all state court judges are bound by the United States Constitution, federal courts: cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims .... Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.
> *Id.* at 15 ... Thus, the plaintiff must prove the inadequacy of the state courts.

*Id.* at 420.

In applying *Younger* in the context of ongoing divorce proceedings, this Court has the benefit of not only the Supreme Court's various pronouncements as to several types of abstention but also a Sixth Circuit opinion similar to the one herein, *Bunting v. Gray*, 2 Fed.Appx. 443, 2001 WL 69347

10

(6th Cir. 2001) (unpublished). In *Bunting*, the first prong of *Younger* was met because at the time of the filing of the federal case, the divorce action was pending. The second prong was found to be satisfied because divorce and property division have been held to be an important state interest, the court quoting the above passage from *Kelm*. 44 F.3d at 420.

Plaintiff Bunting could not, however, satisfy the third prong of *Younger*, *i.e.*, showing that the state court proceeding presents an adequate forum for the plaintiff to be able to raise his/her federal claim. Plaintiff Bunting was a child from the plaintiff's first marriage, who was making a claim against her divorcing step-father. She was not a party in the divorce action and was not permitted to bring any claims there. Therefore, *Younger* abstention was not appropriate; lacking the third element for abstention, the federal case could go forward by the child against the step-parent.[1]

On the instant facts, the parties are identical and this Court finds that the third prong is satisfied, as the issues are resolved by the trial court and then several levels of appeal in the state court system. "[C]ase law suggests that, notwithstanding the delay inherent in the finality doctrine, an opportunity to raise constitutional claims is adequate even though such opportunity arises only upon appellate review." *Kelm*, 44 F3d. at 424. *See also Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436 & n.15 (1982).

Because the plaintiff seeks federal interference with matters in a state court proceeding, because nearly absolute equitable restraint is exercised when injunctive relief over a state court is sought, because there is no indication in the record that state appellate courts have exhibited an

---

[1] The *Bunting* court also considered and rejected the "domestic-relations-exception," which applies only to suit in which a plaintiff sues in federal court for divorce, alimony or child custody. *Id.* at 447-48. It also clearly does not apply herein.

11

unwillingness to enforce the plaintiff's federal constitutional rights, because injunctive relief might engender ongoing federal supervision of the process by which state district court judges exercise discretion regarding Kentucky real property, and because the plaintiff has not carried his burden of proving that state courts will not provide an avenue of relief, this Court should and will apply *Younger* abstention principles to refrain from considering this case.

This Court is also of the opinion that an alternate abstention doctrine would make dismissal of the instant action appropriate. It was in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976), that the Supreme Court discussed another form of abstention, based on judicial economy and sound judicial administration. The first prong or factor under this doctrine is to examine whether the state and federal actions are parallel. If not, then abstention is not proper. If the actions are parallel, then the court must analyze six factors in deciding whether to abstain.

This Court finds that the *Milgrom v. Burstein* action in this Court is parallel to the *Milgrom v. Burstein* action in state court, and an analysis of relevant factors indicates that *Colorado River* abstention would be appropriate herein. The state court has jurisdiction over the Kentucky real estate involved; the state action has been ongoing since 1999 and some of the issues have already been addressed and resolved therein; the governing law is primarily Kentucky law; the state courts, including the appellate courts, can protect the plaintiff's federal rights; and piecemeal litigation will be avoided. *Heitmanis v. Austin*, 899 F.2d 521; *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir. 1984). The "key" factor to consider is the availability of complete relief in the state court. *Heitmanis*, 899 F.2d at 528 (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 at 26-27 (1983)). The instant plaintiff may acquire complete relief

12

in the state courts.

## State Claims

Finally, the Court notes that tortious interference with the plaintiff's business, like intentional infliction of emotional distress, is yet another state remedy, a tort claim. While the federal district courts have discretion as to whether to entertain pendent jurisdiction over state claims filed in connection with and arising out of the same facts as §1983 or *Bivens* actions, if the federal claims should be dismissed, then the pendent state claims should be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). In the words of a sister court, "When . . . a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Coleman v. Wirtz,* 745 F. Supp. 434, 439 (N.D. Oh. 1990) (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-350 (1988)).

Since Plaintiff has no remaining federal claim to pursue herein, for the reasons set forth above, this Court declines to exercise supplemental jurisdiction to consider the state claim. *See* 28 U.S.C. §1367(c)(3) (district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which the court has original jurisdiction).

## CONCLUSION

The Court has considered the issues, *supra*, and finds that they demand dismissal of the instant cause. Additionally, the Court has considered the remaining documents filed in the record herein to date, including later-filed motions, responses, and exhibits thereto, so as to evaluate whether the allegations therein cure the fatal flaws requiring dismissal. Having done so, the Court concludes that dismissal, for failure to state a claim, for the purposes of abstention, and for lack of

13

jurisdiction over state claims, remains the appropriate disposition of the instant action. Therefore, the merits of the later motions will not be addressed as they are mooted by today's decision.

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The defendant's motion to dismiss [Record No. 7] is **GRANTED**.

(2) The plaintiff's motion for summary judgment [Record No. 10] is also construed as a response to the defendant's motion and it is **DENIED**.

(3) The plaintiff's additional motions to supplement [Record No. 13]; plaintiff's motion to strike and for multiple additional rulings [Record No. 17]; and his construed motion for leave to add a claim [Record No. 20] are **DENIED** as moot.

(4) The defendant's additional motions to strike and for alternative relief [Record No. 12] and her motion for an order directing release of notices of *lis pendens* [Record No. 16] are **DENIED** as moot.

(5) This action is **DISMISSED**, and a separate Judgment shall be entered contemporaneously herewith in favor of the defendant.

This the 28th day of June, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE